ENOCH DOYLE, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The courts may and should in all criminal trials, whenever necessary, caution the jury against convictions from prejudice or upon insufficient evidence.

2. It is not a rule of law that the jury must view the offense of rape as one well calculated to create strong prejudice against the accused; nor that rape is an accusation easy to make and hard to be defended by an accused, though he be never so innocent; nor is it a rule of law that the attention of the jury be specially directed to the difficulty growing out of the usual circumstances of the crime in defending against rape. These are merely arguments to be addressed to the jury by counsel, and the court commits no error in refusing to give them in the shape of instructions.

3. It is not error to refuse instructions embodying correct principles of law where such principles are not applicable to the facts of the particular case on trial.

4. In a prosecution for rape, where the evidence tends to show that the commission of the offense was accompanied by an exhibition of weapons and threats on the part of the defendant, calculated to produce in the mind of the woman a reasonable fear of death or great bodily harm in case of refusal or resistance on her part, it is not error to refuse to charge the jury that they must acquit the accused, unless satisfied beyond a reasonable doubt that the woman did not during any part of the act *yield* her consent.

5. Consent of the woman from fear of personal violence is void, and though a man lays no hands on a woman, yet if by an array of physical force he so overpowers her that she dares not resist, his carnal intercourse with her is rape.

Doyle v. The State of Florida.—Statement of Case.

6. It is not error for the court to refuse instructions upon the weight of evidence, or instructions assuming as proven facts material matters which are in dispute upon the trial.

7. In the absence of statute there is no law limiting the powers of the jury to convict upon the uncorroborated testimony of the prosecutrix in prosecutions for rape.

8. There is no rule of law that the jury must receive with more than ordinary doubt and suspicion the evidence of the prosecutrix in rape cases, and the court commits no error in refusing to so charge.

9. Where there is evidence to support a verdict this court will not reverse the decision of the trial court refusing to grant a new trial on the ground of insufficient evidence, unless the preponderance of evidence is such that the jury must have been improperly influenced to render the verdict.

Writ of Error to the Circuit Court for Duval county.

## STATEMENT.

The plaintiff in error was tried and convicted at the Spring term, 1896, Circuit Court of Duval county, for the crime of rape, and after overruling his motion for a new trial, the court passed sentence of death upon him, from which he sued out writ of error to this court. The errors assigned here are based upon certain instructions refused, and upon the sufficiency of the evidence to sustain the verdict. The State produced Priscilla Youmans, the prosecutrix who testified that the defendant on August 19, 1895, came to her house in Duval county and requested her to sell him five cents worth of pears; that she told him her husband did not allow her to sell the pears, but as defendant seemed so anxious to buy them she went into the house and after she got in the house, she turned around and saw defendant; that he solicited her to sexual intercourse, and she told him to go away if that

was what he came for, but defendant kept begging and offered her five dollars to submit; that she still refused and defendant then began cursing and drew a knife and threatened to kill her if she did not submit, saying he would gratify his desire any way; that he would kill her if she did not submit, so she "worked back" and laid down on the bed and defendant cursing and threatening to kill her, pulled up her dress and "did what he came there to do;" that defendant penetrated her; that when he got up he asked witness if she was going to tell, and she said no, and promised him not to tell; defendant said he would kill her if she did; that she recognized the defendant as the same person that assaulted her, although she had never seen him before the assault and did not see him again until he was arrested and brought before her the following December. This witness was not interrogated as to any resistance on her part; nor as to any complaints made after the occurrence, nor as to any other matters connected with the crime or her conduct at the time of or after its commission.

John Upton on the part of the State testified that he arrested the defendant in December, 1895, on a charge of having committed rape near Baldwin the previous summer; that defendant was gambling with a crowd of negroes; and told the witness he would give him all the money he had to protect him; as soon as he was arrested defendant asked witness if he wanted him for something at Baldwin.

The defendant testified that he lived in Savannah, Georgia, working in the resin yards there; that he was not in Baldwin in August, 1895; that he never saw the prosecutrix until he was arrested and brought before her in December, 1895; that when arrested he was on his way

to a place in Florida to make turpentine boxes. Defendant exhibited to the jury "his foot, which disclosed the fact that his big toe and the one next to it were gone," and he also "showed the jury scars on his face." He testified that he was not arrested by Benj. McCallum in Marion county in December, 1894. The defendant read in evidence the depositions of Fred Jones, Mary Jones, Josephine Jones, Isaac Spier, Isaiah Doyle and Simeon Doyle, none of whom had seen defendant since he was arrested, all of whom claimed to be able to identify defendant from the description contained in a letter from defendant's counsel, Mr. Cockrell, to Isaiah Doyle, defendant's brother, all of whom testified that Enoch Doyle was in Savannah, Georgia, on August 19, 1895, or about that time. Some of them stated that Enoch Doyle, whom they saw at that time, had a scar on the cheek; others that his greater toe was gone. The letter of Mr. Cockrell was not given in evidence, nor any other description of defendant except as stated above.

John Whitehead and Wiley Clay, in rebuttal, testified that they had known defendant two or three years; that they saw him in Baldwin on August 14, 1895, and Wiley Clay had a conversation with him there that day.

Benjamin McCallum testified that he arrested defendant Doyle in December, 1894, in Marion county, Florida; that he used to see defendant in Ocala. This was all the evidence introduced upon the trial.

The court refused the following instructions requested by plaintiff in error: 1st. The charge made against defendant is in its nature a most heinous one and well calculated to create strong prejudice against the accused, and the attention of the jury is directed

to the difficulty growing out of the nature of the usual circumstances of the crime in defending against the accusation of rape. Voluntary submission on the part of the woman while she has power to resist, no matter how tardily given or how much force had theretofore been used, does not constitute rape. 2d. Prosecutrix being in full possession of natural mental and physical power, and not terrified by threats or in such a position that resistance would be useless, it must appear that she resisted to the full extent of her ability; otherwise it is not rape. 3d. Unless you are satisfied beyond any reasonable doubt that she did not during any part of the act yield her consent you must acquit. 4th. I charge you that this is an accusation easy to make and hard to be defended by the accused, though he be never so innocent, and hence the law is that you should receive with more than ordinary doubt and suspicion the evidence of the prosecutrix. 5th. I further charge you that if upon considering the whole evidence, including the evidence contained in the depositions, there remains a reasonable doubt in your minds as to whether this prisoner was not only in Duval county at the time of the commission of this offense, but also that he forcibly and against the consent of the prosecutrix carnally knew her, then you must acquit. 6th. I warn you against conviction on the unsupported testimony of the prosecutrix. Unsupported testimony is not sufficient to convict.

The other facts in the case are stated in the opinion of the court.

*R. S. Cockrell.* (on brief of P. D. Cockrell), for Plaintiff in Error.

*The Attorney-General*, for Defendant in Error.

CARTER, J.:

The trial court was justified in refusing the first as well as the fourth instruction, because the first sentence of each instruction announced matters of argument merely, and not principles of law. The court may, and should whenever necessary, in all criminal trials, caution the jury against convictions from prejudice or upon insufficient evidence; but it is not a rule of law that the jury must view the offense of rape as a most heinous one, or one well calculated to create strong prejudice against the accused; or that the attention of the jury be specially directed to the difficulty growing out of the usual circumstances of the crime in defending against rape; nor is it a rule of law that rape is an accusation easy to make, and hard to be defended by an accused, though he be never so innocent. In the case of Crump vs. Commonwealth (Va.), 2 Fed. & St. Cr. Rep. 433, S. C. 37 S. E. Rep. 760; it is said that instructions of this nature are merely statements of the conclusions of the judicial mind from experience in the trial of this class of offenses rather than enunciations of principles of law, and that the oft' repeated observation of Lord Hale, included in the fourth instruction was entirely proper by way of argument to the jury, but not as an independent instruction of law from the court. People vs. Barney, 114 Cal. 554, 47 Pac. Rep. 41.

The third instruction is also erroneous, because it requires a greater degree of resistance upon the part of a woman than the law and common sense demand where the offense is accompanied as in this case, with an exhibition of weapons and threats, calculated to

produce in the mind of the woman a reasonable fear of death or great bodily harm in case of resistance. Consent of the woman from fear of personal violence is void, and though a man lays no hands on a woman, yet if by an array of physical force, he so overpowers her that she dares not resist, his carnal intercourse with her is rape. 2 Bishop's Criminal Law, sec. 1125; Rice vs. State, 35 Fla. 236, 17 South. Rep. 286; Clark's Criminal Law, 188; Felton vs. State, 139 Ind. 531, 39 N. E. Rep. 228. This instruction, utterly ignored the rule dispensing with resistance under such circumstances, and although the principles therein stated might be applicable to a case where no exhibition of weapons and threats to use them were shown in evidence, they are not correct when applied to the facts of this case, and the court properly refuses to give them. Felton vs. State, 139 Ind. 531, 39 N. E. Rep. 228; Huston vs. People, 121 Ill. 497, 13 N. E. Rep. 538.

The second instruction was also erroneous because it was a charge upon the weight of the evidence. By it the jury were told that prosecutrix was at the time of the alleged rape in possession of her natural mental and physical power, and not terrified by threats, or in such a position that resistance would be useless. All these were matters for the jury to determine from the evidence, and the court by giving the instruction would have taken these questions from the jury and confined the jury to the sole question whether prosecutrix resisted to the full extent of her ability. Giles vs. State, 83 Ga. 367, 9 S. E. Rep. 783.

The fourth and sixth instructions were properly refused. Both of them, when applied to the facts of

11

this case, told the jury that, as a matter of law, the defendant could not be convicted upon the uncorroborated testimony of the prosecutrix. In several States such a rule is expressly enacted by statute, and in one or two others the courts have held this to be the law independent of statute. But the weight of authority, and better reason in the absence of statute, is that there is no law limiting the powers of the jury to convict on the uncorroborated testimony of the prosecutrix. 2 Bishop's Criminal Procedure, sec. 968; Boddie vs. State, 52 Ala. 395; Barnett vs. State, 83 Ala. 40, 3 South. Rep. 612; Monroe vs. State, 71 Miss. 196, 13 South. Rep. 884.

The fourth instruction stated the law to be that a jury should receive with more than ordinary doubt and suspicion the evidence of the prosecutrix in prosecutions for rape. As without the testimony of the prosecutrix no conviction could have been had in this case, and the court charged the jury that they must give defendant the benefit of all reasonable doubts, it is apparent that had the court given this instruction, the whole controversy would have been resolved into this proposition; the defendant is entitled to the benefit of all reasonable doubts, his guilt is proven only by the prosecutrix; her testimony must be received with extraordinary doubt and suspicion, therefore defendant is entitled to a verdict. If in any case it is proper for the court to instruct the jury that they should scrutinize the testimony of the prosecutrix with caution, no authority can be found to sustain the proposition that such testimony must, as a matter of law, be received with more than ordinary doubt and suspicion. Monroe vs. State, 71 Miss. 196, 13 South. Rep. 884; 2 Bishop's Criminal Procedure, sec. 968; 3 Green-

leaf on Evidence, sec. 212. The Judge has no power to instruct the jury as to the weight of evidence, but only as to the rule. Williams vs. Dickenson, 28 Fla. 90, 9 South. Rep. 847.

The fifth instruction was fully covered by the general charge of the court, and was therefore properly refused.

We are asked to reverse the judgment in this case upon the ground that the evidence is insufficient to sustain the verdict. In Sherman vs. State, 17 Fla. 888, it is said: "We do not think we ought to interpose our judgment, even if we differed with the jury in their conclusions. The rule is otherwise unless we can discover some evidence that the jury was improperly influenced. As to the sufficiency of this testimony and the veracity of the witnesses, the jury were the sole judges," and this rule is binding upon us. The court below charged the jury very favorably for the accused. The jury were instructed, among other things, that the presumption of innocence accompanied the defendant through each step of the trial as to each material allegation, and the presumption obtained until overcome by evidence establishing guilt beyond a reasonable doubt; that the evidence must convince the minds of the jury beyond reasonable doubt of the identity of the prisoner with the person who it was claimed committed the crime, and that the prisoner did against the will of the prosecutrix, and by force, have carnal knowledge of her person, or by threats and fear of death or great bodily harm, overcame any resistance upon her part, and that a reasonable doubt as to the identity of the prisoner, or on the question of force, or its equivalent, fear of bodily harm or death or duress, would entitle the prisoner to an acquital.

No exception was taken to any portion of the charge or any ruling upon evidence. The Judge who presided at the trial, not only approved the verdict by refusing a new trial, but imposed the heaviest penalty known to the law upon the defendant, although the statute left it discretionary with him to impose a lighter sentence. The jury whose provence it was to pass upon the testimony thought the proof so clear that they failed to embody a recommendation to mercy in their verdict. While the testimony of the prosecutrix might have been more lengthy in details, and therefore more satisfactory to those minds which shudder at taking human life for a crime sometimes so hard to defend against as rape, yet the testimony of this woman, who is not shown to be of bad character for veracity or chastity, and who was an utter stranger to defendant, and therefore not apt to be influenced by motives of animosity toward him, seems to have been given in a spirit of truth, and sincerity, and we are not justified in saying it is untrue, when twelve jurors, whose provence it was to pass upon it, have said it was credible, and when their verdict has received the sanction and approval of the Judge who presided at the trial. The judgment is, therefore, affirmed.